**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LANCE GRAHAM, | : | CIVIL NO.: 1:24-cv-00832 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**I. Introduction.**

In this social security action, Plaintiff Lance Graham seeks judicial review
of the final decision of the Commissioner of Social Security ("Commissioner")
denying his claim for disability insurance benefits under Title II of the Social
Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g). For the reasons set
forth below, we will affirm the Commissioner's decision and enter judgment in
favor of the Commissioner.

---

[1] Frank Bisignano is now the Commissioner of Social Security, and he is
automatically substituted as the defendant in this action. *See* Fed. R. Civ. P.
25(d) (providing that when a public officer sued in his or her official capacity
ceases to hold office while the action is pending, "[t]he officer's successor is
automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted
in accordance with this subsection shall survive notwithstanding any change in the
person occupying the office of Commissioner of Social Security or any vacancy in
such office.").

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9-1* to *9-7*.[2]  In July 2021, Graham protectively filed[3] an application for disability insurance benefits. *See Admin. Tr.* at 222–23.  He contends that he has been disabled since October 1, 2019. *Id*. at 41, 45.[4]  After the Commissioner denied his claim at the initial level and at the reconsideration level of administrative review, Graham requested an administrative hearing. *Id.* at 143.  In December 2022, Graham — who was represented by counsel—as well as a vocational expert testified at a hearing before Administrative Law Judge Sharon Zanotto (the "ALJ"). *Id*. at 33–76.  In May 2023, the ALJ denied Graham's claim for benefits. *Id*. at 15–32.  Graham appealed the ALJ's decision to the Appeals Council, which denied his

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Graham's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

[4] Although Graham alleged in his application for benefits that he has been disabled since November 16, 2016, *see Admin. Tr.* at 222, at the hearing before the Administrative Law Judge, he amended his alleged onset date to October 1, 2019, *Id*. at 41, 45.  October 1, 2019, is after a prior ALJ issued a decision denying Graham benefits. *See id*. at 78–95 (prior ALJ decision dated Sept. 24, 2019).  It appears that Graham amended his alleged onset date to October 1, 2019, to avoid any overlap with the time period at issue in connection with his prior claim and any res judicata issues that may arise if the time periods overlap.

request for review. *Id*. at 1–6. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In May 2024, Graham, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying his claim. *See Doc. 1*. He requests that the court find that he is entitled to benefits, remand the case to the Commissioner for further proceedings, or grant such relief as is justified. *Id*. ¶14 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7*. The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 8, 9*. The parties filed briefs, *see docs. 16, 20, 23*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v.*

*Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Graham is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

## B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[5]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Under this process, the

---

[5] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Graham met the insured-status requirements through March 31, 2022. *Admin. Tr.* at 19, 20.

ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the

national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional

capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive

requisites.  Most significantly, the ALJ must provide "a clear and satisfactory

explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642

F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The

"ALJ may not reject pertinent or probative evidence without explanation." *Johnson

v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or

simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On May 5, 2023, the ALJ denied Graham's claim for benefits. *Admin. Tr.* at

15–32.  She proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Graham had not engaged in substantial gainful activity since his alleged onset date of October 1, 2019, through March 31, 2022, his date last insured. *Id.* at 20.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Graham had the following severe impairments: mixed conductive and sensorineural hearing loss and tonic clonic seizures. *Id.*  The ALJ also found that Graham's asthma, hypertension, hyperlipidemia, diabetes mellitus, obesity, and vertigo were not severe impairments. *Id*. at 21.

### C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Graham did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 21–22.  Specifically, the ALJ considered Listing 2.10 with respect to Graham's hearing loss and Listing 11.02 with respect to his seizure disorder. *Id*. at 21.

### D.  The RFC.

The ALJ then determined that Graham had the RFC to perform a full range of work at all exertional levels with some non-exertional limitations. *Id*. at 22.  She concluded that Graham cannot climb ladders, ropes, or scaffolds, and he can have no more than occasional oral communications. *Id*.  She also concluded that Graham can have no more than frequent exposure to dust, odors, gases, and chemicals, and no exposure to open flames or open bodies of water. *Id*.

In making this RFC assessment, the ALJ noted Graham's testimony at the hearing regarding his conditions and limitations. *Id*.[6]  But she stated that "[f]or the reasons described below, including improvement with treatment and grossly normal exam findings, [Graham's] medical evidence does not demonstrate disabling limitations." *Id*. at 23.

After summarizing the treatment records, the ALJ concluded that although Graham's impairments "could reasonably be expected to cause some symptoms[,]" his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*.  And she continued:

> [Graham] carries a diagnosis of epilepsy but has not had any
> seizures since 2015 or 2016 with no medication side effects.

---

[6] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

> He has sensorineural hearing loss that an audiogram revealed to
> be moderate-severe on the right and mild on the left and exams
> showed the claimant able to hear the doctor's voice.  Finally,
> [Graham] did yardwork, golfed, cooked, did laundry, shopped,
> drove, cleaned, hunted, and fished.  These activities fall within
> the confines of the aforementioned residual functional capacity
> assessment.

*Id*. at 23–24.

In making the RFC assessment, the ALJ also considered the opinions and findings of the state agency medical and psychological consultants, a psychological consultative examiner, and Graham's treating physician. *Id*. at 24–25.  And she stated whether she found those opinions persuasive, somewhat persuasive, or not persuasive. *Id*.[7]

The ALJ then summarized the reasons for her RFC assessment:

> In sum, the above residual functional capacity assessment is
> supported by the medical evidence, including grossly normal
> exam findings, conservative treatment, and his ability to golf,
> garden, drive, and shop.  I have carefully considered the non-
> severe impairments in assessing the residual functional capacity
> and find[] no specific functional vocational limitations beyond
> those outlined in the above-defined residual functional capacity.
> As a result, I find the claimant has the residual functional
> capacity to perform work with the aforementioned non-
> exertional limitations.

*Id*. at 25.

---

[7] Because Graham does not raise a claim regarding the ALJ's handling of the opinion evidence, we do not set forth the details of the opinions or the ALJ's discussion of the opinions.

### E.  Step Four.

At step four of the sequential-evaluation process, the ALJ found that Graham was unable to do his past relevant work. *Id.*  She noted that the vocational expert testified that Graham's past relevant work was a composite of three jobs—heavy equipment mechanic, tree trimmer, and park landscape specialist—which was performed as a skilled and heavy exertional job. *Id.* at 25–26.  And she concluded that because "this work was substantial gainful activity, was performed long enough for [Graham] to achieve average performance, and was performed within the relevant period[,]" "it is past relevant work." *Id.* at 26.  Relying on the testimony of the vocational expert, the ALJ found that Graham could not perform his past relevant work. *Id.*

### F.  Step Five.

At step five of the sequential-evaluation process, considering Graham's age, education, work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that there were jobs—such as night cleaner and dining room attendant—that exist in significant numbers in the national economy that Graham could perform. *Id.* at 26–27.

In sum, the ALJ concluded that Graham "was not be under a disability, as defined in the Social Security Act, at any time from October 1, 2019, the alleged

onset date, through March 31, 2022, the date last insured." *Id*. at 27. Thus, she

denied Graham's claim for benefits. *Id*.

## V. Discussion.

Graham presents the following claims: (1) the ALJ erred by failing to

address his need to lie down during the day in determining the RFC; (2) the ALJ

committed multiple errors when evaluating his symptoms. We address each claim

in turn.

### A. The ALJ did not err by failing to address Graham's need to lie down during the day in determining the RFC.

Graham asserts that his medications made him fatigued, and despite taking

his medications at night, he was tired and often dozed off during the day. *Doc. 16*

at 9. He claims that the ALJ erred by failing to address his purported need to lie

down during the day in determining his RFC.

"The ALJ—not treating or examining physicians or State agency

consultants—must make the ultimate disability and RFC determinations."

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is

"'that which an individual is still able to do despite the limitations caused by his or

her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359

n.1). In assessing a claimant's RFC, the ALJ must consider all the evidence of

record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter*, 642 F.2d at 705.

The ALJ recognized that Graham asserted that his medications caused fatigue and caused him to sleep two to three hours a day. *Admin. Tr.* at 22 (ALJ citing Graham's testimony). But the ALJ observed that Graham's treatment

13

records indicated that the only side effects of his medications that were noted were gum disease and osteoporosis, and after his medication regimen was changed, no side effects were noted. *Id*. at 23.  And she did not include in the RFC a limitation regarding the need to lie down during the day.  Reading the ALJ's decision as a whole, the ALJ rejected Graham's assertions regarding his need to lie down during the day.

As noted above, the ALJ must set forth reasons for his or her decision. *Burnett*, 220 F.3d at 119.  But the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis. *Jones*, 364 F.3d at 505. Rather,  the "ALJ is merely required 'to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Watters ex rel. L.B. v. Colvin*, No. 3:13-CV-770, 2014 WL 1268566, at *6 (M.D. Pa. Mar. 26, 2014) (quoting *Jones*, 364 F.3d at 505).  The ALJ must explain the dispositive reasons for his or her decision. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).  And the ALJ's decision must be read as whole. *Jones*, 364 F.3d at 505.

Although the ALJ recognized Graham's testimony about his need to lie down during the day due to medication side effects, she implicitly rejected that testimony based on, among other things, the lack of notations in Graham's medical records regarding that side effect.  "Although an ALJ is required to consider all

14

evidence before him and give some indication of the evidence which he rejects and

his reason(s) for discounting such evidence the ALJ's reasoning may be implicit in

the decision." *Ramazan K. v. Dudek*, No. 2:24-CV-06138 (BRM), 2025 WL

1720409, at *14 (D.N.J. June 20, 2025) (internal quotations marks and citations

omitted).  Here, the ALJ sufficiently explained her RFC determination, and she

addressed Graham's testimony, the medical records, the medical opinions, and

Graham's activities of daily living.  In sum, we conclude that the ALJ did not err

by failing to explicitly discuss Graham's purported need to lie down during the day

in determining his RFC.

## B.  The ALJ did not err when evaluating Graham's symptoms.

Graham contends that the ALJ committed errors when evaluating his

symptoms.  Although he proclaims that the ALJ committed multiple errors in this

regard, he identifies only two such purported errors: (1) how the ALJ addressed his

activities of daily living; and (2) the ALJ's failure to specifically address his work

history.

"An ALJ must carefully consider a claimant's statements about [his]

symptoms, but the ALJ is not required to credit them." *Sudler v. Comm'r of Soc.

Sec.*, 827 F. App'x 241, 245 (3d Cir. 2020) (internal citations and quotation marks

omitted).  "The framework for evaluating a claimant's reported symptoms is set

forth in 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p." *Falardo-Weller*

*v. Saul*, No. 1:18-CV-1719, 2020 WL 2542222, at \*3 (M.D. Pa. May 19, 2020).

"When evaluating a claimant's symptoms, the ALJ must follow a two-step process." *Id*.  "The ALJ must first ask whether the claimant has a medically determinable impairment that 'could reasonably be expected to produce [the claimant's] alleged symptoms.'" *Id*. (quoting 20 C.F.R. § 404.1529(b)).  "If there is no medically determinable impairment that could reasonably produce the symptom alleged, the symptom cannot be found to affect the claimant's ability to do basic work activities." *Wilson v. Kijakazi*, No. 4:20-CV-944, 2022 WL 676279, at \*15 (M.D. Pa. Mar. 7, 2022).  But if there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, "the ALJ must evaluate the 'intensity and persistence' of those symptoms to determine how, if at all, they limit the claimant's capacity for work." *Falardo-Weller*, 2020 WL 2542222, at \*3.

The ALJ found that Graham's "medically determinable impairments could reasonably be expected to cause some symptoms[.]" *Admin. Tr.* at 23.  But she concluded that Graham's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision." *Id*.

"In evaluating the intensity and persistence of a claimant's alleged symptoms, the ALJ is required to 'consider all of the available evidence, including . . . medical history, the medical signs and laboratory findings, and statements about how . . . symptoms affect' the claimant." *Falardo-Weller*, 2020 WL 2542222, at *3 (quoting 20 C.F.R. § 404.1529(a)).  "The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings." *Sager v. Kijakazi*, No. 3:21-CV-100, 2022 WL 773917, at *12 (M.D. Pa. Feb. 11, 2022), *report and recommendation adopted*, 2022 WL 757237, at *1 (M.D. Pa. Mar. 11, 2022).  "Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms." *Id.* at 13 (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)).  "These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief;

any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions." *Id*.

"An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Wilson*, 2022 WL 676279, at *16.[8] But "[a]n ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason." *Id*.

Graham contends that the ALJ erred in finding this his activities of daily living were not entirely consistent with his allegations. We disagree.

As noted above, "an ALJ may properly consider a plaintiff's activities of daily living when evaluating [his] subjective complaints of pain or other symptoms." *Thomas v. O'Malley*, No. 3:22-CV-01774, 2024 WL 1333033, at *5 (M.D. Pa. Mar. 28, 2024) (citing *Turby v. Barnhart*, 54 F. App'x 118, 122 n.1 (3d Cir. 2002)). In fact, a claimant's daily activities is one of the factors that the ALJ is required to consider when evaluating a claimant's symptoms and limitations. 20 C.F.R. § 404.1529(c)(3)(i). And although Graham contends that the ALJ failed to explain how his activities of daily living, which he could do at his own pace, would

---

[8] Although evaluation of a claimant's alleged symptoms may involve an evaluation of the claimant's credibility regarding the limiting effects of those symptoms, SSR 16-3p eliminated the term "credibility" from the Social Security Administration's policy guidance in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029 at *1.

translate to the ability to do work, the ALJ considered Graham's activities of daily living as only one factor among other factors, including Graham's medical records and the opinion evidence. While a different factfinder may have weighed Graham's activities of daily living differently, the ALJ did not err in considering them as one among the other factors that figured into her decision.

Graham also contends that the ALJ erred by failing to consider his consistent work history. Again, we disagree.

The ALJ is required to consider a claimant's work history in evaluating the claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record . . . ."); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979) (stating that "when the claimant has a work record like Dobrowolsky's twenty-nine years of continuous work, fifteen with the same employer his testimony as to his capabilities is entitled to substantial credibility"). But "[w]ork history is only one of many factors an ALJ may consider in assessing a claimant's subjective complaints." *Hajdarevic v. Dudek*, No. 3:24-CV-00636, 2025 WL 1004377, at *19 (M.D. Pa. Apr. 3, 2025) (internal quotation marks and citations omitted). And "'the ALJ is not required to equate a long work history with credibility.'" *Dickson v. Berryhill*, No. 3:17-CV-1586, 2018 WL 2461761, at *7 (M.D. Pa. June 1, 2018) (quoting *Maher v. Astrue*, No. CIV.A. 08-156J, 2009 WL 3152467, at *3 (W.D. Pa. Sept. 30, 2009)).

Further, an ALJ is not required to explicitly discuss a claimant's work history in every case. *Freeman v. Colvin*, No. 4:14-CV-01581, 2015 WL 3739077, at *7 (M.D. Pa. June 15, 2015) (stating that "while Freeman's work history was one factor out of many in determining his credibility, the ALJ was under no duty to discuss Freeman's work history"); *Thompson v. Colvin*, No. 3:13-CV-1311, 2015 WL 1198103, at *23 (M.D. Pa. Mar. 16, 2015) (stating that "while Plaintiff's work history was one (1) factor out of many in determining her credibility, the ALJ was under no duty to discuss this work history in her decision"). Thus, it is not reversible error in every case for the ALJ not to explicitly discuss a claimant's work history. *See Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015) (concluding that there was no basis for relief where "the ALJ's credibility determination was based on a broad view of the record and would have been supported by substantial evidence regardless of whether the ALJ had explicitly considered Sanborn's employment history"); *Hoover v. Kijakazi*, No. 3:22-CV-00575, 2023 WL 6201380, at *8 (M.D. Pa. Sept. 22, 2023) ("But while the plaintiff's work history must be considered as part of the ALJ's broader view of the record in evaluating his or her symptoms, . . . there is no error in an ALJ's failure to explicitly discuss the plaintiff's work history in the ALJ's evaluation of the plaintiff's symptoms.").

Here, the ALJ cited Graham's earnings record when determining that he was insured through March 31, 2022. *Admin. Tr.* at 19.  Thus, she was aware of his work history.  The ALJ also considered Graham's past relevant work in step four. *Id.* at 25–26.  Further, the ALJ addressed the medical records, the medical opinions, and Graham's activities of daily living, and she concluded that Graham's statements concerning his symptoms and limitations were not consistent with the other evidence in the record.  Reading the ALJ's decision as whole, we cannot say that her failure to specifically discuss Graham's work history in connection with her credibility determination was error.

## VI.  Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

21